UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VINCENT THOMAS AND
ALAN QUEEN,

              Plaintiffs,

v.                                  Civil Case No. 15-10055
                                  Honorable Linda V. Parker

RIGHT CHOICE STAFFING
GROUP, LLC, ADEPT
SERVICES GROUP, INC.,
DOWNRIVER STAFFING
GROUP, LLC, AUTOLINE
TRANSPORTATION, INC.
TIMOTHY SCHULTZ, AND
TRACY SHAFFER,

              Defendants.
_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY OR DISMISS PROCEEDINGS

On January 7, 2015, Plaintiffs filed this putative class action lawsuit against Defendants alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219.  Plaintiffs filed an amended complaint on February 20, 2015. (ECF No. 4.)  Presently before the Court is Defendants' Motion to Compel Arbitration and Stay or Dismiss Proceedings, filed April 1, 2015.  (ECF No. 20.) The motion has been fully briefed.  (ECF Nos. 21, 23-24, 26.)  Finding the facts

1

and legal arguments sufficiently presented in the parties' pleadings, the Court dispensed with oral argument pursuant to Eastern District of Michigan Local Rule 7.1(f) on April 28, 2015.  (ECF No. 22.)  For the reasons that follow, the Court is granting in part and denying in part Defendants' motion.

## Factual and Procedural Background

Defendants Right Choice Staffing Group, LLC ("Right Choice"), Adept Services Group, Inc. ("Adept"), Downriver Staffing Group, LLC ("Downriver Staffing"), and Autoline Transportation, Inc. ("Autoline") (collectively "Defendant Entities") are in the business of moving automobiles, primarily for Chrysler Group, LLC, from one location to another within the State of Michigan.  (Am. Compl. ¶ 29.)  Defendant Timothy Schultz ("Schultz") is the resident agent, authorized officer, and manager of the Defendant Entities.  (*Id*. ¶ 20.)  Defendant Tracy Shaffer ("Shaffer") is the Staffing Manager, Manager, and Human Resources agent for the Defendant Entities.  (*Id*. ¶ 21.)  The Defendant Entities share the same resident agent, managers, office location, staff, and employees, and otherwise operate as the same business entity.  (*Id.* ¶ 22; *see also* Pls.' Resp., Ex. 1, ECF No. 21-2.)  Autoline, which was incorporated on June 15, 2012, was dissolved as a Michigan corporation on February 25, 2014.  (Am. Compl. ¶ 19; Pls.' Resp., Ex. 1, ECF No. 21-1.)

2

Defendants hire qualified drivers to move vehicles as needed by Defendants' clients.  Plaintiff Vincent Thomas ("Thomas") began working as a driver in September 2012.  Although Defendants state that Thomas was hired by Right Choice, the Michigan Department of Licensing and Regulatory Affairs' website reflects Right Choice as having been formed only on September 17, 2013.  (Pls.' Resp., Ex. 1, ECF No. 21-2.)  On October 21, 2013, Thomas signed a document with the heading "Adept Services Group" in which he represents that he is a "contractor" or "contract worker" of Adept or its subsidiaries, including but not limited to Autoline and Right Choice and that, as such, he is "responsible for [his] own health insurance pursuant to the Affordable Care Act . . .."  (Defs.' Mot., Ex. 2, ECF No. 20-3.)  Thomas also executed a "Subcontractor Agreement" between himself and Right Choice.  (*Id.*, Ex. 3, ECF No. 20-4.)

The Subcontractor Agreement states that it is "made and effective" on December 16, 2013, and it is signed by Shaffer as Chief Operating Officer of Right Choice.  (*Id.*)  The document provides that "the Contractor [Right Choice] has entered into an agreement with the Subcontractor [Thomas] for various duties such as driveway work known henceforth as 'Subcontractor Work.' " (*Id.*)  It further provides that Thomas "shall be employed as an independent contractor and shall be responsible to provide and furnish all tools, materials and supplies needed or necessary to the performance of the work . . .."  (*Id.*)  The agreement reflects that

3

Thomas would be paid $8.00 per hour for his work.  (*Id*.)  It contains the following arbitration clause:

> Any and all disputes arising out of the Subcontract between
> Contractor and Subcontractor shall be resolved by binding arbitration.
> In doing so, the parties expressly waive their right to a jury trial if any,
> on these issues and further agree that the award of the arbitrator shall
> be final and binding upon them as though rendered by a court and
> shall be enforceable in any court having jurisdiction over the same.

(*Id*. ¶ 8.)

Plaintiff Alan D. Queen ("Queen") began working as a driver on or about February 26, 2013.  On October 21, 2013, Queen also signed an "Adept Services Group" document, stating that he is a contractor and responsible for his own health insurance pursuant to the Affordable Care Act.  (Defs.' Mot., Ex. 4, ECF No. 20-5.)  On December 16, 2013, Queen also executed a Subcontractor Agreement, which is identical to the agreement signed by Thomas except that Queen's hourly rate is identified as $11.00.  (*Id*., Ex. 5, ECF No. 20-6.)

In this lawsuit, Plaintiffs allege that although classified as independent contractors, they in fact were employees and thus were entitled under the FLSA to one and a half times their regular rates of pay for hours worked over forty hours in a week.  Plaintiffs allege that they and other similarly situated individuals worked more than forty hours per week, but were not compensated by Defendants in accordance with the FLSA.

4

### Defendants' Arguments and Plaintiffs' Response

In their pending motion, Defendants argue that the Subcontractor Agreement, specifically the arbitration clause therein, requires Plaintiffs to arbitrate their FLSA claims, including their claim that they were erroneously classified as independent contractors rather than employees. Defendants maintain that the Honorable Judith E. Levy compelled arbitration in a case against Right Choice and Adept in which the same Subcontractor Agreement governed the parties' relationship. (Defs.' Br. in Supp. of Mot. at Pg ID 125, citing Order Granting in Part and Den. in Part Defs.' Mot. to Compel Arbitration and Stay or Dismiss Proceedings, *Conner v. Right Choice Staffing Group, LLC*, No. 14-12887, (E.D. Mich. Jan. 16, 2015), ECF No. 21.)

Defendants argue that Plaintiffs must submit their claims to arbitration individually, rather than for class-wide arbitration. Defendants contend that Plaintiffs' claim against Downriver Staffing, Autoline, Schultz, and Shaffer should be dismissed with prejudice because Plaintiffs did not work for them, but rather only Right Choice.

Alternatively, Defendants contend that Plaintiffs' claim against Downriver Staffing, Autoline, Schultz, and Shaffer should be submitted to arbitration pursuant to the terms of the Subcontractor Agreement based on the agency relationship between these defendants and Right Choice and because the claim is intertwined

5

with the underlying contract.  Specifically, Defendants argue, Plaintiffs claims against all defendants is dependent upon whether Plaintiffs were fully compensated and worked as independent contractors.

Finally, Defendants argue that Plaintiffs settled their claims when they received, endorsed, and presented for payment checks they received from Right Choice in a settlement with the United States Department of labor.  (Defs.' Mot., Exs. 7, 8, ECF Nos. 20-8, 20-9.)  Thomas was paid $661.00, and Queen was paid $1,307.48.  (*Id.*)

Plaintiffs argue in response that because they are not claiming that Right Choice violated any terms of the Subcontractor Agreements, their FLSA claims do not fall within the arbitration clause of those agreement.[1]  Plaintiffs contend that their claims instead arise out of the employment relationship.  Analogizing their case to *Bratt Enterprises, Inc. v. Noble International Limited*, 338 F.3d 609 (6th Cir. 2003), Plaintiffs maintain that the language of the arbitration clause in the Subcontractor Agreements is not sufficiently broad to encompass their claims.

---

[1] Plaintiffs stress that their opposition to Defendants' motion to compel is not premised on an argument that the Subcontractor Agreements are unenforceable, unconscionable, or obtained through fraud or duress or that Defendants waived any right to arbitration.  (Pls.' Resp. Br. at Pg ID 158-59, ECF No. 21.)  Plaintiffs indicate that they also are not arguing that the arbitration provision is unenforceable because it impinges on federally guaranteed substantive or procedural rights or because of a lack of knowing and voluntary waiver of any rights on Plaintiffs' behalf.  (*Id.*)

6

But even if their claims fall within the scope of the Subcontractor Agreements, Plaintiffs contend that there is no basis for requiring them to arbitrate their claims against any defendant but Right Choice, as Adept, Downriver Staffing, and Autoline are neither parties to nor third-party beneficiaries of the Subcontractor Agreements, and, Plaintiffs argue, they do not fall within any of the recognized factors under which non-signatories are bound to arbitration agreements.  Plaintiffs contest Defendants' assertion that they worked only for Right Choice-- pointing out that Right Choice was formed only *after* Thomas and Queen were hired.  Plaintiffs maintain that whether they were contractors or employees also is a fact in dispute.

Plaintiffs argue that the facts and legal arguments asserted by the parties in *Bratt Enterprises* are distinguishable from the present case and thus Judge Levy's decision in that case provides no support for Defendants' arguments here.  Finally, Plaintiffs argue that they have not settled their claims by accepting, endorsing, and submitting for payment the checks they received pursuant to Right Choice's settlement with the Department of Labor, because there is no showing of an informed and meaningful agreement to waive their right to bring a private action.

### Applicable Law and Analysis

The Court addresses first Defendants' arguments that Plaintiffs already settled their claims and that Downriver Staffing, Autoline, Schultz, and Shaffer

should be dismissed with prejudice because Plaintiffs did not work for them. Defendants fail to show an informed and meaningful agreement by Plaintiffs to waive their right to bring a private action.  The mere cashing of a check for back wages does not constitute an "agreement" to settle and thus a waiver of the employee's right to sue.  *See, e.g., Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 305-06 (7th Cir. 1986) (explaining Department of Labor's distinctive treatment for settlements it believes constitute a full settlement on behalf of employees and those that fall short); *see also Beauford v. ActionLink, LLC*, 781 F.3d 396, 406 (8th Cir. 2015) ("Simply tendering a check and having the employee cash that check does not constitute an 'agreement' to waive claims" . . . the employee must also sign a waiver of any legal claims in a process supervised by the Department of Labor); *Sneed v. Sneed's Shipbuilding, Inc.*, 545 F.2d 537 (5th Cir. 1997) (finding valid waiver under the FLSA where the employee agreed to accept the payment the Department of Labor determined to be due *and* signed a waiver).

Defendants offer no evidence in support of their assertion that Plaintiffs never worked for any entity but Right Choice, and the assertion is contrary to the allegations in Plaintiffs' amended complaint.  (*See, e.g.*, Am. Compl. ¶ 1.) Plaintiffs' allegations must be presumed true for purposes of deciding Defendants' motion to dismiss.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  Moreover,

8

Plaintiffs both began working as drivers before Right Choice is reflected as being formed. Thus they presumably worked for one or more of the other defendants prior to that time. Lastly, the documents Plaintiffs signed related to health insurance coverage bears the heading "Adept Services Group."

Plaintiffs allege that Schultz and Shaffer worked as a manager, staffing manager, or human resources agent. Shaffer signed the Subcontractor Agreements as Right Choices' Chief Operating Officer. The FLSA imposes individual liability on "any person acting directly or indirectly in the interest of an employer in relation to an employee . . .." 29 U.S.C. § 203(d). The Sixth Circuit uses an "economic reality" test to determine whether a person is an "employer" responsible for FLSA obligations. *Fegley v. Higgins*, 19 F.3d 1126, 1131 (6th Cir.), *cert. denied*, 513 U.S. 875 (1994). This test considers whether the individual has operational control of the corporation, has a significant ownership interest in it, controls significant functions of the business, determines salaries, or makes hiring decisions. *Id.*; *see also U.S. Dep't of Labor v. Cole Enter., Inc.*, 62 F.3d 775, 778 (6th Cir. 1995). At this stage of the proceedings, Schultz's and Shaffer's roles are not sufficiently developed to determine whether they can or cannot be held liable under the FLSA.

For these reasons, the Court cannot conclude that Downriver Staffing, Autoline, Schultz, or Shaffer must be dismissed with prejudice or that Plaintiffs

9

settled their claims.  Thus the Court turns to the question of whether Plaintiffs'
claims against these defendants and Right Choice are subject to arbitration.

When considering a motion to stay proceedings and compel arbitration
under the Federal Arbitration Act ("FAA"), the court has four tasks: (1) to
determine whether the parties agreed to arbitrate; (2) to determine the scope of any
agreement to arbitrate; (3) if federal statutory claims are asserted, to decide
whether Congress intended those claims to be non-arbitrable; and (4) if the court
finds some, but not all, claims subject to arbitration, to decide whether to stay the
remainder of the proceedings pending arbitration.  *Stout v. J.D. Byrider*, 228 F.3d
709, 714 (6th Cir. 2000).

Plaintiffs do not dispute that they agreed to arbitrate certain matters.  The
Sixth Circuit has concluded that FLSA claims are arbitrable.  *Floss v. Ryan's
Family Steak Houses, Inc.*, 211 F.3d 306 (6th Cir. 20000).  Thus the only tasks this
Court has to perform are determining whether the arbitration agreement's scope
extends to Plaintiffs' FLSA claims and, if it reaches some but not all of Plaintiffs'
claims, whether a stay of any non-arbitrable claim is appropriate.

When analyzing the scope of an arbitration agreement, courts in the Sixth
Circuit examine the language of the agreement "in light of the strong federal policy
in favor of arbitration, resolving any doubts as to the parties' intentions in favor of
arbitration."  *Albert M. Higley Co. v. N/S Corp.*, 445 F.3d 861, 863 (6th Cir. 2006)

10

(citing *Great Earth Cos., Inc. v. Simons*, 288 F.3d 878 (6th Cir. 2002)); *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983) (interpreting the FAA as establishing that "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration"). "However, countervailing principles also apply," *Nestle Waters N. Am., Inc. v. Bollman*, 505 F.3d 498, 504 (6th Cir. 2007), as "the federal policy in favor of arbitration is not an absolute one[.]" *Albert M. Higley Co.*, 445 F.3d at 863. Rather, "[a]rbitration under the [FAA] is 'a matter of consent, not coercion.' " *Id.* (quoting *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989)). Thus, "[w]hile ambiguities in the language of the agreement should be resolved in favor of arbitration, we do not override the clear intent of the parties, or reach a result inconsistent with the plain text of the contract, simply because the policy favoring arbitration is implicated." *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002) (internal citation omitted). In sum, "no matter how strong the federal policy favors arbitration, arbitration is a matter of contract between the parties, and one cannot be required to submit to arbitration a dispute which it has not agreed to submit to arbitration." *Simon v. Pfizer Inc.*, 398 F.3d 765, 775 (6th Cir. 2005) (citations omitted).

   Plaintiffs can prevail in this matter only if they are found to have been employees rather than independent contractors, because "[u]nder the FLSA, only

11

employees are entitled to overtime and minimum-wage compensation. . . . Independent contractors do not enjoy [the] FLSA's protections." *Keller v. Miri Microsystems LLC*, 781 F.3d 799, 807 (6th Cir. 2015) (citing cases). The agreements signed by Plaintiffs require the parties to submit to binding arbitration "*[a]ny and all* disputes arising out of this Subcontract between Contractor and Subcontractor[.]" (Defs.' Mot. Exs. 3, 5 (emphasis added).) The agreements do more than establish the hourly rate to be paid Plaintiffs. (*Id.*) They define Plaintiffs as independent contractors. (*Id.*) The dispute regarding Plaintiffs' classification therefore arises out of the agreements and falls within the scope of the arbitration provision. *See Muriithi v. Shuttle Exp., Inc.*, 712 F.3d 173, 179 (4th Cir. 2013) (finding arbitration clause in agreement classifying the plaintiff as an independent contractor sufficiently broad to render arbitrable the issue of plaintiff's classification for purposes of his FLSA claim). The Court, however, must address the fact that the Subcontractor Agreements were effective only as of December 16, 2013 (after Plaintiffs began the work for which they claim entitlement to overtime pay) and the fact that the agreements are between Plaintiffs and Right Choice, only.

As relevant to the effective date of the agreements, the FLSA statute of limitations is two years for non-willful violations and three years for willful ones. 29 U.S.C. § 255(a). In their amended complaint, Plaintiffs allege that Defendants'

12

violations were willful.  (Am. Compl. ¶ 35.)  Thomas began working in September 2012, and Queen began working in February 2013.  As such, Plaintiffs are seeking, and can seek, relief under the FLSA for a period before the Subcontractor Agreements became effective.  The plain language of the agreements does not render them retroactive.  Nothing in the language of the agreements reflects an intent to impose a duty to arbitrate matters arising before the effective date, nor do the agreements define the work Plaintiffs' performed before the effective date.  Therefore, the Court concludes that Plaintiffs cannot be compelled to arbitrate their claims with respect to their FLSA rights before December 16, 2013.[2]

With respect to the fact that only Right Choice is a signatory to the agreements with Plaintiffs, a contract generally cannot bind a nonparty.  *AFSCME Council 25 v. Wayne Cnty.*, 811 N.W.2d 4, 11 (Mich. Ct. App. 2011) (quoting

---

[2] The Court acknowledges the Michigan courts' preference for disputes in a case being resolved in a single forum.  *See City of Detroit Police & Fire Ret. Sys. v. GSC CDO Fund, Ltd.*, No. 289185, 2010 WL 1875758, at *4 (Mich. Ct. App. May 11, 2010) (quoting *Rooyakker & Sitz, PLLC v. Plante & Moran, PLLC*, 742 N.W.2d 409, 421 (Mich. Ct. App. 2007) ("[T]his state has a strong public policy that favors arbitration 'as a single, expeditious means of resolving disputes,' and that this policy would be thwarted if all disputed issues in a case had to be segregated into arbitrable and non-arbitrable categories.").  Nevertheless, as indicated, "[w]hile ambiguities in the language of the agreement should be resolved in favor of arbitration, [the court] do[es] not override the clear intent of the parties, or reach a result inconsistent with the plain text of the contract, simply because the policy favoring arbitration is implicated."  *Huffman v. Hilltop Co.*, 747 F.3d 391, 396 (6th Cir. 2014).  "Moreover, because arbitration is a creature of contract, a party may not be compelled to arbitrate any dispute he has not agreed to arbitrate."  *Id.* (internal quotation marks, citation, brackets, and ellipsis omitted).

*EEOC v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002) ("It goes without saying that a contract cannot bind a nonparty.")).  Therefore, "a party cannot be required to arbitrate when it is not legally or factually a party to the agreement." *St. Clair Prosecutor v. AFSCME*, 388 N.W.2d 231, 239 (Mich. 1986).  Nevertheless, "[n]onsignatories of arbitration agreements can still be bound by [the] agreement pursuant to ordinary contract-related legal principles, including incorporation by reference, assumption, agency, veil-piercing/alter ego, and estoppel." *AFSCME Council 25*, 811 N.W.2d at 81 (citing *Thomson-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 776 (2d Cir. 1995)).  State law governs the question of whether a non-party can enforce an arbitration clause against a party.  *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009).

Under Michigan law, "a party to an arbitration agreement may be equitably estopped from litigating its claims against non-parties in court and may be ordered to arbitration . . . 'when the signatory raises allegations of substantially interdependent and concerted misconduct by both the non-signatory and one or more signatories to the contract.' "  *City of Detroit Police and Fire Ret. Sys. v. GSC CDO Fund, Ltd*., No. 289185, 2010 WL 1875758, at *6 (Mich. Ct. App. May 11, 2010) (unpublished opinion) (quoting *Brown v. Pacific Life Ins. Co.*, 462 F.3d 384, 398 (5th Cir. 2006)).  Several federal circuit courts have utilized this estoppel theory-- termed "alternative estoppel"-- to bind a signatory to arbitrate with a non-

14

signatory at the non-signatory's insistence because of the close relationship between the entities involved, the relationship of the alleged wrongs to the obligations and duties in the contract, and the fact that the signatory's claims " 'were intimately founded in and intertwined with the underlying contract obligations.' " *Thomson-CSF*, 64 F.3d at 779 (brackets removed) (quoting *Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc.*, 10 F.3d 753, 757 (11th Cir. 1993), abrogated on other grounds by *Carlisle*, 556 U.S. 624); *see also J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A.,* 863 F.2d 315, 320-21 (4th Cir. 1988); *McBro Planning & Dev. Co. v. Triangle Elec. Constr. Co.*, 741 F.2d 342, 344 (7th Cir. 1984), abrogated on other grounds by *Carlisle*, 556 U.S. 624.  Specifically related to the present case, courts have relied on alternative estoppel to require arbitration of a signatory's charges against a parent company where the signatory entered into an arbitration agreement with the parent's subsidiary.  *J.J. Ryan & Sons*, 863 F.2d at 320-21 (citing cases) ("when the charges against a parent company and its subsidiary are based on the same facts and are inherently inseparable, a court may refer claims against the parent to arbitration even though the parent is not formally a party to the arbitration agreement.").

The Honorable Judith E. Levy recently relied on alternative estoppel when requiring the signatories to an arbitration agreement to arbitrate their FLSA claims against a non-signatory in *Southerland v. Corporate Transit of America*, No. 13-

15

14462, 2014 WL 4906891, at *5 (E.D. Mich. Sept. 30, 2014) (unpublished)-- a case different than the one cited in Defendants' motion.  In *Southerland*, the plaintiffs were delivery drivers who provided transportation services to third parties on behalf of the defendant, Corporate Transit of America ("CTA").  *Id*. at *1.  CTA obtained the plaintiffs' services through a third party, Subcontracting Concepts, LLC ("SCI").  *Id*.  The plaintiffs alleged they were employed as drivers by CTA and thus entitled to overtime pay under the FLSA.  *Id*.  CTA alleged that the plaintiffs were independent contractors and thus not entitled to the FLSA's protections.  *Id*.

In order to work for CTA, the plaintiffs had to sign both an Independent Contractor Acknowledgment Form with CTA and an Owner/Operator Agreement with SCI.  *Id*.  The latter agreement contained an arbitration clause.  *Id*. at **1-2. When the plaintiffs sued CTA for FLSA violations, CTA moved to compel arbitration pursuant to the terms of the SCI agreement and Judge Levy granted the motion.  The court relied on the undisputed fact that CTA and SCI were closely related, that the plaintiffs foresaw the involvement of CTA in their relationship with SCI, and finally that "most, if not all, of the issues raised by the plaintiff[s] . . . are explicitly addressed by the SCI Agreement."  *Id*. at 5.

Similarly, in the present case, the Defendant Entities are closely related. Plaintiffs in fact allege that "Defendant corporations share the same Resident

16

Agent, Managers, office location, staff and employees and otherwise operate as the same business entity." (Am. Compl. ¶ 22.) The issues raised by Plaintiffs-- that is, whether they were employees or independent contractors-- are explicitly addressed by the Subcontractor Agreements. This Court therefore concludes that Plaintiffs are required to arbitrate their FLSA claims against all Defendants relating to work performed as of the effective date of the Subcontractor Agreements.

Having reached the above conclusions, the Court next turns to Plaintiffs' request for classwide relief. Plaintiffs' request raises two issues: (1) whether the arbitration agreement provides for classwide arbitration; and (2) whether the court or arbitrator must decide the issue of classwide arbitrability. *See Reed Elsevier, Inc. v.* Crockett, 734 F.3d 594 (6th Cir. 2013). As to the latter issue, the Sixth Circuit has held "that the question whether an arbitration agreement permits classwide arbitration is a gateway matter, which is reserved 'for judicial determination unless the parties clearly and unmistakably provide otherwise.' " *Id.* at 599. Where the agreement does not mention classwide arbitration at all, the *Reed Elsevier* court held that the determination of classwide arbitrability lies with the court. *Id.* According to the court, silence with respect to classwide arbitration also means that classwide arbitration is not authorized. *Id.* ("The principle reason to conclude that this arbitration clause does not authorize classwide arbitration is that the clause nowhere mentions it."); *see also Huffman v. The Hilltop Co.*, 747

17

F.3d 391, 398-99 (6th Cir. 2014) (finding *Reed Elsevier* controlling such that an

agreement's silence as to classwide arbitration is construed as not authorizing

classwide arbitration).  The arbitration clause in the Subcontractor Agreements

does not mention classwide arbitration.  As such, the Court makes the

determination that Plaintiffs may not seek classwide relief with respect to their

FLSA claims arising from work performed under the Subcontractor Agreement

(i.e., work performed as of December 16, 2013).

The remaining question is whether the Court should stay the proceedings

with respect to Plaintiffs' FLSA claims related to work performed prior to

December 16, 2013, pending arbitration.  The Federal Arbitration Act allows

piecemeal, concurrent litigation where only some of the relevant issues are

arbitrable.  *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985).

Nevertheless, the Supreme Court has determined that "[i]n some cases . . . it may

be advisable to stay litigation among the nonarbitrating parties pending the

outcome of the arbitration. That decision is one left to the district court . . . as a

matter of its discretion to control its docket." *Moses H. Cone Mem'l Hosp.*, 460

U.S. at 20 n. 23.  Exercising that discretion, several district courts within the Sixth

Circuit have stayed the litigation of non-arbitrable claims pending the outcome of

an arbitration.  *See, e.g., Stacy v. H & R Block Tax Servs., Inc.*, No. 07-13327,

2008 WL 321300 (E.D. Mich. Feb. 4, 2008); *Vaughn v. Marshall*, No. 2:09 CV

00097, 2009 WL 3260382, at *4 (S.D. Ohio Oct. 8, 2009); *DRS Precision Echo, Inc. v. Michigan Magnetics, Inc.*, No. 1:02-cv-161, 2003 WL 1141900, at *5 (W.D. Mich. Jan. 7, 2003).

Citing a Sixth Circuit case as precedent, one district judge in this Circuit held that "where some claims are non-arbitrable, they can simultaneously proceed in [the district c]ourt only *if* they can be separated out; in other words, *if their resolution has no effect on the arbitrable issues*." *DRS Precision Echo, Inc.*, 2003 WL 1141900, *5 (emphasis in original) (citing *Lipskey v. Oppenheimer & Co.*, 717 F. 2d 314, 319-20 (6th Cir. 1983)). As stated by another district judge, a court should stay litigation of non-arbitrable claims "where a decision in one forum could affect the resolution of claims in the other." *Spartech CMD, LLC v. Int'l Auto. Components Grp., N.A.*, No. 08-13234, 2009 WL 440905, at *13 (E.D. Mich. Feb. 23, 2009). Courts have found a stay appropriate where "a lawsuit against a nonsignatory [to an arbitration agreement] depends upon the same facts and is inherently inseparable from the arbitrable claims," *Patnik v. Citicorp Bank Trust FSB*, 412 F. Supp. 2d 753, 762 (N.D. Ohio 2005), where the arbitration may resolve issues in the lawsuit, *Sierra Rutile Ltd. v. Katz*, 937 F.2d 743, 750 (2d Cir. 1991), or where staying the litigation would promote the federal policy in favor of arbitration, *AgGrow Oils, LLC v. Nat'l Union Fire Ins. Co.*, 242 F.3d 777, 782 (8th Cir. 2001). In comparison, courts have found a stay unnecessary after finding the

19

non-arbitrable issues insufficiently intertwined with arbitrable issues, such as where the claims are " based on separate and distinct projects. . .." *Yamasaki Korea Architects, Inc. v. Yamasaki Assoc., Inc.,* No. 08-10342, 2008 WL 4940590, at *5 (E.D. Mich. Nov. 17, 2008); *see also Spartech CMD*, 2009 WL 440905, at *14 (declining to stay non-arbitrable claims which were based on a contract distinct from those requiring arbitration and involved an independent transaction).

In the instant case, Plaintiffs' arbitrable and non-arbitrable claims are inseparable, as a resolution of both depends upon the determination of whether Plaintiffs were employees or independent contractors when they worked as drivers for Defendants.  There is no suggestion that the manner in which Plaintiffs performed this work changed over time and thus it appears that they retained the same status (employer or independent contractor) before and after the Subcontractor Agreements' effective date.  A decision in one forum with respect to this issue clearly has an effect on the resolution of Plaintiffs' FLSA claims in the other forum.  Efficiency concerns also favor a stay.  If the arbitrator determines that Plaintiffs were independent contractors, that finding would be dispositive of their non-arbitrable FLSA claims.  As such, the Court is staying Plaintiffs' non-arbitrable FLSA claims pending the outcome of arbitration.

**Conclusion**

In summary, the Court finds no basis to dismiss Plaintiffs' claims against any defendant at this time. The Court also finds that Plaintiffs and Right Choice agreed to arbitrate disputes arising under the Subcontractor Agreements, effective December 16, 2013, and that the scope of the arbitration clause in those agreements extends to the issue of whether Plaintiffs were independent contractors or employees when they worked as drivers. Alternative estoppel requires Plaintiffs to arbitrate their FLSA claims against all Defendants with respect to this issue. The plain language of the Subcontractor Agreements does not extend the scope of the arbitration clause to Plaintiffs' request for relief under the FLSA for work performed prior to December 16, 2013. The Court is staying proceedings with respect to whether Plaintiffs are entitled to relief for work performed prior to December 16, 2013, pending the outcome of arbitration.

Accordingly,

**IT IS ORDERED**, that Defendants' Motion to Compel Arbitration and Stay or Dismiss Proceedings is **GRANTED IN PART AND DENIED IN PART** in that Plaintiffs must arbitrate their FLSA claims with respect to work performed after December 16, 2013. Defendants fail to establish that any defendant must be dismissed at this time;

21

**IT IS FURTHER ORDERED**, that this matter is **STAYED** pending arbitration.

s/ Linda V. Parker

LINDA V. PARKER

U.S. DISTRICT JUDGE

Dated: July 6, 2015

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, July 6, 2015, by electronic and/or U.S. First Class mail.

s/ Richard Loury

Case Manager
