UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VINCENT THOMAS and ALAN QUEEN,

    Plaintiffs,

v.                                                                     Civil Case No. 15-10055
                                                                   Honorable Linda V. Parker

RIGHT CHOICE STAFFING GROUP, LLC,
ADEPT SERVICES GROUP, INC.,
DOWNRIVER STAFFING GROUP, LLC, AUTOLINE
TRANSPORTATION, INC., TIMOTHY SCHULTZ,
and TRACY SHAFFER,

    Defendants.
_____/

**OPINION AND ORDER DENYING PLAINTIFFS' MOTION TO RENDER ARBITRATION CLAUSE UNENFORCEABLE**

On July 6, 2015, this Court entered an opinion and order finding that employment agreements signed by Plaintiffs required them to arbitrate their Fair Labor Standards Act ("FLSA") claims against Defendants, but only to the extent those claims arose after December 16, 2013 (the effective date of the agreements).[1] (ECF No. 27.) Plaintiffs now ask the Court to find the arbitration clause in their employment agreements unenforceable because the American Arbitration Association ("AAA"), to which the parties agreed to submit Plaintiffs' arbitrable claims, classified the dispute as subject to its commercial as opposed to its

---

[1] The Court stayed the matter with respect to Plaintiffs' pre-December 16, 2013 claims, pending the result of the arbitration. (ECF No. 27.)

1

employment rules.  This resulted in AAA splitting the anticipated arbitration costs between the parties and invoicing Plaintiffs fees of $9,700.  Rather than pursuing a challenge to this classification with AAA, Plaintiffs filed the pending motion.  Because the arbitration agreement is silent as to arbitration costs and fees and the division of costs is based only on AAA's decision-- which does not appear to be definitive-- the Court holds that AAA's conduct is not a basis for declaring the arbitration clause unenforceable.

## Background

Plaintiffs indicate, and Defendants do not dispute, that after this Court ordered the parties to arbitrate Plaintiffs' FLSA claims for work performed after December 16, 2013, they agreed to have AAA conduct the arbitration and Plaintiffs submitted a Demand for Arbitration to the AAA on September 15, 2015. (ECF No. 28 ¶¶ 6, 7.)  Plaintiffs filed their demand as an employer-promulgated plan in an employment dispute to be governed by AAA's employment rules.  (*Id.* ¶ 8.)  Those rules required Plaintiff to pay a $200.00 filing fee.  (*Id.*); *see also* www.adr.org.  Those rules further provide that the employer, alone, is obligated for the costs of arbitration.  *Id.*

Defendants objected to the characterization of the matter as an employment dispute and requested arbitration under AAA's commercial arbitration rules.  (ECF No. 28 ¶ 9.)  Under these rules, arbitration costs are split between the parties.  (*Id.*

¶ 11); *see also* www.adr.org.  AAA agreed with Defendants that the matter should be arbitrated under its commercial rules and sent Plaintiffs an invoice for $9,750, representing their portion of the actual or estimated arbitration costs.[2]  (ECF No. 28 ¶¶ 10, 12.)  Upon receipt of the invoice, Plaintiffs' counsel contacted AAA and challenged the commercial classification of the matter.  (*Id.* ¶ 13.)

On February 9, 2016, the arbitrator conducted a telephone conference with the parties' attorneys during which Plaintiffs' counsel again argued that the matter is an employment dispute governed by AAA's employment rules.  (*Id.* ¶ 15.)  The arbitrator requested briefing from the parties on the issue, and set a March 11, 2016 deadline for Plaintiffs' brief.  (ECF No. 29 ¶ 20.)  Instead of filing a brief with the AAA, Plaintiffs filed the instant motion asking the court to render the arbitration clause unenforceable.  (ECF No. 28.)

## Parties' Arguments

In their motion, Plaintiffs argue that the arbitration clause is unenforceable because the arbitration costs to be borne by Plaintiffs render arbitration unduly burdensome and would dissuade similarly situated plaintiffs from seeking to vindicate their FLSA rights.  (*Id.*)

---

[2] According to Defendants, the arbitrator subsequently reduced this amount to $7,500 when the parties agreed that dispositive motions are unnecessary.  (ECF No. 29 ¶¶ 12, 13.)  Plaintiffs claim they never received a reduced invoice.  (ECF No. 30 at Pg ID 317 n.1.)  Whether the amount is $9,750 or $7,500 has no impact on the Court's analysis.

Defendants respond, contending first that the Court lacks subject matter jurisdiction to decide Plaintiffs' motion. (ECF No. 29.) Defendants next urge the Court to deny Plaintiffs' motion because it is untimely. Defendants classify Plaintiffs' motion as a delayed motion for reconsideration of the Court's decision ordering arbitration. As such, Defendants argue it is too late. Defendants alternatively argue that Plaintiffs filed their motion too early because they did not wait for the arbitrator to make a final decision regarding whether AAA's commercial or employment rules will govern the matter.

Finally, in their response to Plaintiffs' motion, Defendants argue that it is too speculative whether Plaintiffs will be required to pay any arbitration costs and whether those costs are prohibitive. Defendants point out that Plaintiffs submitted no evidence with their motion from which to gauge whether they can afford those costs. As such, Defendants contend that Plaintiffs do not satisfy their burden of showing that the commercial rules' cost-shifting provision would have a chilling effect on their ability to pursue their FLSA claims.

Plaintiffs filed a reply brief addressing Defendants' arguments. (ECF No. 30.) Plaintiffs assert legal arguments supporting why the Court has jurisdiction to decide their motion and why their motion is timely (i.e., neither too late nor too early). In reply, Plaintiffs argue that the arbitration costs they will need to pay are not speculative and they submit information concerning their approximate annual

4

incomes ($20,000 for Thomas and $27,000 for Queens) to show why these costs are prohibitively expensive and would dissuade similarly situated litigants from vindicating their statutory rights.

## Applicable Law & Analysis

The question of whether an arbitration agreement is enforceable is a question for a court to decide, as this Court's July 6, 2015 opinion and order illustrates. Whether the costs of the arbitral forum effectively prevent a plaintiff from vindicating his or her statutory rights, thereby rendering an arbitration agreement unenforceable, also is a question for the court. *See Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79 (2000), *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646 (6th Cir. 2003). As such, this Court has jurisdiction to decide Plaintiffs' pending motion.

Plaintiffs did not file their motion too late for the Court to consider the relief sought.[3] The Court does not agree with Defendants that Plaintiffs' motion is an untimely (i.e., late) request for reconsideration of the Court's July 6, 2015 decision. When they responded to Defendants' motion to compel arbitration, Plaintiffs had no reason to suspect that they would be responsible for any of the costs of arbitration, particularly as the parties' arbitration agreement is silent with regard to those costs.

---

[3] Whether Plaintiffs filed their motion too early is addressed below.

Moreover, Plaintiffs' motion could be construed as a request for relief under Rule 60(b)(2) of the Federal Rules of Civil Procedure. Such motions must be brought within a reasonable time and at least one year after entry of the order. Fed. R. Civ. P. 60(c). Plaintiffs filed their motion soon after AAA sent them an invoice for their share of the arbitration costs and less than a year after the Court's order finding the arbitration agreement enforceable. As such, the time of Plaintiffs' filing in relation to the Court's July 6, 2015 decision is not a reason for denying their request to find the arbitration agreement unenforceable due to the costs to them of arbitrating their claims.

In *Randolph*, the Supreme Court addressed the issue of "whether an arbitration agreement that does not mention arbitration costs and fees is unenforceable because it fails to affirmatively protect a party from potentially steep arbitration costs." 531 U.S. at 82, 89-92. While the Court concluded that such silence does not render the agreement per se unenforceable, it did not foreclose the possibility "that the existence of large arbitration costs could preclude a litigant … from effectively vindicating his or her federal statutory rights in the arbitral forum[]" and therefore provide a reason for a court to refuse to enforce it. *Id*. The Court held, however, that the plaintiff failed to meet her burden of showing a likelihood of incurring such costs. *Id*. at 91-92. Thus, the *Randolph* Court had no reason to articulate a standard for deciding when the costs of arbitration render an

agreement to arbitrate unenforceable. The Sixth Circuit adopted such a standard in *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646 (2003) (en banc).

The arbitration agreements at issue in *Morrison* were not silent on arbitration costs but provided that the parties would split those costs. *Id*. at 654-55. The Sixth Circuit adopted a case-by-case approach to determine whether such a cost-splitting provision "effectively prevents the vindication of a plaintiff's statutory rights" such that "those rights cannot be subject to mandatory arbitration under that agreement." *Id*. at 658. Under this approach, a court must "look[] to the possible 'chilling effect' of the cost-splitting provision on similarly situated potential litigants, as opposed to its effect merely on the actual plaintiff in any given case." *Id*. at 663.

The Sixth Circuit instructed courts engaging in this analysis to "define the class of such similarly situated potential litigants by job description and socioeconomic background … tak[ing] the actual plaintiff's income and resources as representative of this larger class's ability to shoulder the costs of arbitration." *Id*. The court further instructed, however, that this requires neither " 'a searching inquiry into an employee's bills and expenses[]' " nor a " 'detailed analyses of the household budgets of low-level employees to conclude that arbitration costs in the thousands of dollars deter the vindication of employees' claims in arbitral fora.' " *Id*. at 663-64 (quoting *Giordano v. Pep Boys-Manny, Moe & Jack, Inc.*, No. CIV. A 99-1281, 2001 WL 484360, at *6 (E.D. Pa. Mar. 29, 2001)). With respect to the

costs of arbitration, the *Morrison* court indicated that "the reviewing court should look to average or typical arbitration costs" as potential litigants likely will look to those costs when deciding whether to submit their claims to arbitration. *Id.* at 664. Those costs should be compared to the costs of litigation, which should be weighed "in a realistic manner" (that is, recognizing that most plaintiffs bringing discrimination claims are represented by counsel on a contingency-fee basis and thus are faced with minimal costs in the judicial forum). *Id.*

The Sixth Circuit identified one important distinction between the judicial and arbitral fora: "In the arbitral forum, the litigant faces an additional expense-- the arbitrator's fee and costs-- which are never incurred in the judicial forum." *Id.* at 664. The court must consider whether the plaintiff will incur this additional expense. While there may be a possibility that the plaintiff will not be required to pay costs or arbitral fees if he or she succeeds on the merits, the Sixth Circuit instructed reviewing courts to discount this possibility. *Id.* The court explained:

> The issue is whether the terms of the arbitration agreement itself would deter a substantial number of similarly situated employees from bringing their claims in the arbitral forum, and thus the court must consider the decision-making process of these potential litigants. In many cases, if not most, employees considering the consequences of bringing their claims in the arbitral forum will be inclined to err on the side of caution, especially when the worst-case scenario would mean not only losing on their substantive claims but also the imposition of the costs of the arbitration.

*Id.* at 664-65.

The Sixth Circuit anticipated that the above analysis would "yield different results in different cases." *Id*. at 665. More specifically:

> It will find, in many cases, that high-level managerial employees and others with substantial means can afford the costs of arbitration, thus making cost-splitting provisions in such cases enforceable. … In the case of other employees, however, this standard will render cost-splitting provisions unenforceable in many, if not most, cases.

*Id*. (citations omitted). In other words, a cost-splitting provision may not deter an individual with a six-figure income from arbitrating his or her claims. *Id*. (citing *Williams v. Cigna Fin. Advisors, Inc.*, 197 F.3d 752, 764-65 (5th Cir. 1999)). But for lower-paid litigants like the plaintiffs before it, the court found that arbitration fees of $1,622 would serve as a deterrence.[4] *Id*. (citing *Shankle v. B-G Maintenance Mgmt. of Colorado, Inc.*, 163 F.3d 1230, 1234-35 (10th Cir. 1999).

The Sixth Circuit indicated that this amount "[i]n the abstract … may not appear prohibitive, but it must be considered from the vantage point of the potential litigant in a case such as this." *Id*. at 669. The court explained:

---

[4] The *Morrison* decision is a consolidation of two actions for en banc review: *Morrison v. Circuit City Stores, Inc.* and *Shankle v. Pep Boys-Manny, Moe & Jack, Inc.* 317 F.3d 646. The plaintiff in *Morrison* faced arbitration costs equal to three percent of her annual salary of $54,060, or $1,622. *Id*. at 669. In *Shankle*, the plaintiff presented evidence that the arbitrator's fee was $150.00 per hour. *Id*. at 676. Based on an earlier Tenth Circuit decision (coincidentally brought by a plaintiff with the same last name), the Sixth Circuit estimated that the plaintiff's employment discrimination arbitration would involve between fifteen and forty hours of arbitrator time, resulting in costs between $2,250 and $6,000. *Id*. at 676 (citing *Shankle*, 163 F.3d at 1234 n.5).

> Recently terminated, the potential litigant must continue to pay for housing, utilities, transportation, food, and the other necessities of life in contemporary society despite losing her primary, and most likely only, source of income. Unless she is exceedingly fortunate, the potential litigant will experience at least a brief period of unemployment.

*Id.* Moreover, the court added, "[m]inimal research will reveal that the potential costs of arbitrating … dispute[s] usually far exceed this amount and easily reach thousands, if not tens of thousands, of dollars[.]" *Id.* at 669. Based on this information, and evidence of the plaintiff's previous salary, the Sixth Circuit concluded that the cost-splitting provision in the parties' "arbitration agreement would deter a substantial percentage of potential litigants from bringing their claims in the arbitral forum[]" and therefore was unenforceable. *Id.* at 669-70.

Having reached that conclusion, the court in *Morrison* turned to the question of whether the cost-splitting provision was "severable from the agreement as a whole or whether [it] render[s] the entire agreement unenforceable. *Id.* at 674-75. If severability is an option, the agreement to arbitrate is enforceable, but the cost-splitting provision is not. *See id.*

The Sixth Circuit's decision in *Morrison* compels the finding that the arbitration costs AAA invoiced Plaintiffs (whether the amount is $7,500 or $9,750) are substantial and, when considered in light of Plaintiffs' annual salaries ($20,000 or $27,000), would deter a substantial number of similarly situated potential litigants from seeking to vindicate their federal statutory rights in the arbitral

10

forum. Unlike *Morrison*, however, these costs are not imposed on Plaintiffs because of a provision in their employment agreements. The agreements are silent with respect to arbitration costs. The only reason Plaintiffs may be required to pay substantial arbitration costs is that AAA decided to classify their claims as a commercial rather than an employment dispute. The Sixth Circuit's decision does not directly answer what a court should do when the prohibitive costs arise from third-party conduct rather than the arbitration agreement itself. This Court finds guidance, however, in the *Morrison* court's response to conduct by AAA which it found threatened to deny the plaintiff an arbitral forum allowing for the pursuit of the plaintiff's statutory right.

The district court in *Morrison* had ruled that the arbitration agreement was unenforceable because the procedures followed by AAA were inconsistent with several terms of the parties' arbitration agreement.[5] 317 F.3d at 678. While the Sixth Circuit agreed that the procedures followed by AAA were inconsistent with the parties' agreement and found that those procedures could undermine the legitimacy of the arbitral forum, it held that the proper remedy was an order pursuant to Section 4 of the Federal Arbitration Act mandating that the arbitrator follow the terms of the arbitration agreement. *Id.* at 678-80. Under § 4, "[a] party

---

[5] Those inconsistencies involved the procedures for selecting an arbitrator, the applicability of the Federal Rules of Evidence and the Federal Rules of Civil Procedure, and whether AAA's rules or the arbitration agreement's rules govern when they are inconsistent. *Morrison*, 317 F.3d at 578.

aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition [the district court] … for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. The dispute, the court held, still had to be arbitrated.

Section 4 does not provide a remedy in the current case because the written agreement fails to speak to the costs of arbitration. Nevertheless, *if* the arbitrator makes a decision with respect to the allocation of fees that undermines the legitimacy of the arbitral forum, there is support in case law for the court to modify that decision on post hoc review. The en banc court in *Morrison* acknowledged this support. 317 F.3d at 661 (citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 32 n.4 (1991); *Boyd v. Town of Hayneville*, 144 F. SUpp. 2d 1272, 1280-81 (M.D. Ala. 2001)). The Sixth Circuit in fact cited several cases where courts found post hoc judicial review of arbitration awards to be a proper and adequate safeguard against the imposition of fees rendering the arbitral forum prohibitively expensive for the individual plaintiff. *Id*. at 661 (citing cases). Although the *Morrison* court identified two reasons for rejecting post hoc judicial review to address the imposition of costs on the plaintiff resulting from a cost-splitting provision in the arbitration agreements, those reasons do not apply here where the plaintiff's costs arise from third-party conduct only.

12

Specifically, the Sixth Circuit identified two problems which in its view rendered post hoc judicial review only "superficial[ly] attractive[]."[6] *Id*. According to the court, the first problem is that "judicial review of arbitration awards is very narrow."[7] *Id*. at 662. As the court recognized, however, there is Supreme Court case law supporting "the view that courts reviewing arbitration awards may vacate or reduce the assessment of costs in appropriate circumstances." *Id*. (citing *Gilmer*, 550 U.S. at 32 n.4.) The Supreme Court stated in *Gilmer*: " '[A]lthough judicial scrutiny of arbitration awards necessarily is limited, such review is sufficient to ensure that arbitrators comply with the requirements of the statutes' at issue." 500 U.S. at 32 n.4 (quoting *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 232 (1987)). Similarly, the Circuit Court for the District of Columbia stated in addressing the potential imposition of arbitration fees on a plaintiff bringing employment discrimination claims under Title VII: "awards may be set aside [or modified] if they are contrary to 'some explicit public policy' that is 'well defined and dominant' and ascertained 'by reference to the laws and legal precedents.' " *Cole*

---

[6] According to the *Morrison* court, post hoc judicial review appears attractive because it is easier to decide whether the costs of the arbitral forum are prohibitively expensive once costs are assessed. 317 F.3d at 661.

[7] The Sixth Circuit noted that "review is made even more difficult where arbitrators do not explain their decisions." *Morrison*, 317 F.3d at 662 (citing *Dawahare v. Spencer*, 210 F.3d 666, 669 (6th Cir. 2000)). No explanation is needed, however, for a court to analyze whether the costs assessed the plaintiff render the arbitral forum prohibitively expensive.

13

*v. Burns Int'l Sec. Servs.*, 105 F.3d 1465, 1486 (1997) (quoting *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 43 (1987)).

The second problem the *Morrison* court identified with post hoc judicial review is the "Catch-22" it poses for evaluating whether the arbitration costs deter plaintiffs from vindicating their statutory rights. As the court explained

> They [plaintiffs] cannot claim, in advance of arbitration, that the risk of incurring arbitration costs would deter them from arbitrating their claims because they do not know what the costs will be, but if they arbitrate and actually incur costs, they cannot then argue that the costs deterred them because they have already arbitrated their claims. Just as Yossarian could not escape flying combat missions by claiming that he was crazy because anyone wanting to be released from combat must be sane, under this approach potential litigants cannot escape arbitration by claiming that the costs are prohibitive until after arbitration, at which point the costs were not prohibitive, because the litigants actually arbitrated their disputes.

*Morrison*, 317 F.3d at 663-63. The approach the court ultimately adopted, however, considers deterrence from the perspective not only of the plaintiff seeking to be relieved from an agreement to arbitrate, but all similarly situated individuals seeking to vindicate their federal statutory rights in the arbitral forum. *See id.* at 663. In other words, the fact that the plaintiff proceeded with arbitration despite the costs does not dictate the conclusion that the costs are not prohibitive when viewed from the perspective of similarly situated individuals. In that case, even though the plaintiff has proceeded with arbitration, on post hoc judicial review the Court still may conclude that the imposition of those costs is

unenforceable and that the arbitration award therefore must be modified as to the allocation of costs.

Moreover, a court evaluating the deterrence factor faces a very different scenario when the parties' arbitration agreement is silent as to costs as opposed to when the agreement provides that the costs of arbitration will be shared equally between the plaintiff and employer. Where the agreement does not address arbitration costs, any risk of the plaintiff incurring arbitration costs is purely speculative. Declaring an arbitration agreement unenforceable under these circumstances-- where it is not at all evident that the arbitral forum will not permit the effective vindication of the plaintiff's statutory rights-- seems contrary to the "liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corpo*, 460 U.S. 1, 24 (1983).

In short, the Court declines to find the arbitration agreements Plaintiffs signed unenforceable where those agreements are silent regarding arbitration costs and fees, the imposition of any fees and/or costs on Plaintiffs results only from a decision by the arbitrator, and no final decision in this regard has been made. The imposition of substantial costs and fees on Plaintiffs will undermine the purpose of the FLSA. In the event such costs and fees are imposed, however, the Court can engage in post hoc review of the arbitrator's award and modify it to conform to public policy.

Accordingly,

**IT IS ORDERED** that Plaintiffs' Motion to Render Arbitration Clause Unenforceable (ECF No. 28) is **DENIED**.

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: November 2, 2016

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, November 2, 2016, by electronic and/or U.S. First Class mail.

s/ Richard Loury
Case Manager
